UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRINA L. FISCHER, | |
| Plaintiff, | CASE NO. 12cv5458-BHS-JRC |
| v. | REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | Noting Date: September 20, 2013 |
| Defendant. | |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 15, 16, 17).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly the medical evidence. The ALJ rejected Dr. Panzer's opinions regarding plaintiff's physical limitations in part with a finding that there were no imaging studies to explain plaintiff's complaints. However, Dr. Panzer explicitly indicated that he was basing his opinions in part on his review of plaintiff's 2006 MRI, which, according to Dr. Panzer, demonstrated plaintiff's early degenerative joint disease and degenerative disc disease.

In addition, the ALJ relied in part on a finding that Dr. Choi based his opinion soley on plaintiff's subjective reports. However, Dr. Choi provided numerous objective observations, such as plaintiff's failure to perform correctly a very basic three-step task, and her inability to remember only three numbers on the backwards digit span test.

For these reasons, and based on the record as a whole, the Court recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

BACKGROUND

Plaintiff, TRINA L. FISCHER, was born in 1964 and was forty-three years old on the alleged date of disability onset of May 3, 2008 (*see* Tr. 176). Plaintiff has past relevant work as a housecleaner, caregiver and animal caretaker, among other jobs (*see* Tr. 37, 202).

As described by defendant, plaintiff's primary diagnosis is chronic low back pain resulting from her motor vehicle accident (*see* Response, ECF No. 16, p. 16). Plaintiff has at least the severe impairments of back pain, depression and anxiety (*see* Tr. 25). At

the time of the hearing, plaintiff reported living at her parents' weekend cabin (*see* Tr. 61-62).

PROCEDURAL HISTORY

On April 17, 2008, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr. 23, 176-78). The application was denied initially on February 3, 2009 and following reconsideration on April 14, 2009 (*see* Tr. 97-99, 103-105). Plaintiff's requested hearing was held before Administrative Law Judge Laura Valente ("the ALJ") on July 8, 2013 (*see* Tr. 42-94). On August 25, 2010, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 20-41).

On March 20, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in May, 2012 (*see* ECF Nos. 1, 4). Defendant filed the sealed administrative record regarding this matter ("Tr.") on October 31, 2012 (*see* ECF Nos. 10, 12).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ erred in her review of the medical evidence; (2) Whether or not the ALJ erred in her review of plaintiff's credibility and testimony; (3) Whether or not the ALJ erred in her review of the lay evidence; (4) Whether or not the ALJ erred in her review of plaintiff's residual functional capacity ("RFC"); and (5) Whether or not the ALJ erred by

basing her step four finding on a RFC that did not include all of plaintiff's limitations (*see* ECF No. 15, p. 1).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled pursuant to the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports

the findings by the ALJ, the Court should "'review the administrative record as a whole,

weighing both the evidence that supports and that which detracts from the ALJ's

conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

*Andrews, supra*, 53 F.3d at 1039). In addition, the Court must independently determine

whether or not "'the Commissioner's decision is (1) free of legal error and (2) is

supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.

2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law

require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27

(9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation

omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570

at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir.

2006) ("we cannot affirm the decision of an agency on a ground that the agency did not

invoke in making its decision") (citations omitted). For example, "the ALJ, not the

district court, is required to provide specific reasons for rejecting lay testimony." *Stout,*

1  *supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

2  the context of social security appeals, legal errors committed by the ALJ may be

3  considered harmless where the error is irrelevant to the ultimate disability conclusion

4  when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

5  LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v.*

6  *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

7  <u>DISCUSSION</u>

8  1.  **Whether or not the ALJ erred in her review of the medical evidence**.

9  The ALJ must provide "clear and convincing" reasons for rejecting the

10  uncontradicted opinion of either a treating or examining physician or psychologist.

11  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d

12  1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

13  a treating or examining physician's opinion is contradicted, that opinion can be rejected

14  only "for specific and legitimate reasons that are supported by substantial evidence in the

15  record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043

16  (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough

17  summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

18  and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing*

19  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

20  In addition, the ALJ must explain why her own interpretations, rather than those of

21  the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849

22  F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant

probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d

1462, 1466 (9th Cir. 1996)(emphasis in original) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will consider the length and extent of the treatment relationship). The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041).

a.   Dr. Timothy Panzer, M.D.

Following examination on April 6, 2009, Dr. Panzer completed a physical evaluation (*see* Tr. 347-50; *see also* Tr. 351-55 (May 4, 2009 treatment record)). He indicated his opinion that plaintiff's chronic low back pain had a marked, or "very significant interference," with plaintiff's ability to sit; stand; walk; lift; and carry (*see* Tr. 349). He opined that plaintiff's overall work level was sedentary (*see id.*). Regarding the level of severity of interference on plaintiff's ability to work from her depression, Dr. Panzer indicated that he deferred to the mental health professional (*see id.*).

Dr. Panzer indicated that it was not plaintiff's first visit with him (*see* Tr. 350). Dr. Panzer observed that plaintiff's self-reported limitations were quite significant and that her MRI of her lumbar spine in 2006 showed only early degenerative joint disease and degenerative disc disease (*see id.*). Dr. Panzer indicated that although plaintiff's symptoms appeared fixed and stable, that there had been no improvement in pain or functional limitations over the last two to three years (*see id.*). Dr. Panzer recommended physical therapy and trial use of a TENS unit, and indicated that he would consider

providing plaintiff with a permanent disability rating if there was no improvmenet with physical therapy (*see id.*).

Dr. Panzer provided a physical residual functional capacity questionnaire on April 28, 2010 (*see* Tr. 463-66). He indicated that plaintiff's prognosis only was fair, but was stable, on chronic opiate pain medication (*see* Tr. 463). Dr. Panzer also indicated specifically the clinical findings and objective signs of plaintiff's pain: "Persistent low back, years after MVA. MRI L-spine 2/10/06 with findings of early degenerative disc disease and facet arthritis but no indication for surgery" (*see id.*). Dr. Panzer indicated that plaintiff's depressive symptoms affected her physical condition and that she was not a malingerer (*see id.*).

At this evaluation, Dr. Panzer indicated that plaintiff should rarely lift less than 10 pounds and never lift more than twenty pounds (*see* Tr. 465). He also indicated that she could twist never; but could stoop; crouch/squat; and climb ladders and stairs rarely (*see id.*). Dr. Panzer opined that plaintiff did not have significant limitations regarding reaching, handling or fingering, but specified that he did not evaluate the frequency at which she could look down; turn her head right or left; look up; or hold her head in a static position (*see id.*). In conclusion, Dr. Panzer opined that plaintiff's mental health condition contributed to her chronic pain syndrome and her overall level of disability (Tr. 466). He also opined that despite her "maximal medical therapy," he did not forsee plaintiff "improving to the point of employability" (*see id.*).

Dr. Panzer provided a functional evaluation of plaintiff for Washington Department of Social and Health Services (DSHS) on October 10, 2011 (*see* Tr. 471-74).

1   Dr. Panzer indicated that he had performed a physical evaluation (Tr. 472) and that

2   plaintiff's range of motion in her back was 25 degrees extension and 70 degrees flexion;

3   and her lateral back range of motion was 30 degrees both to the left and the right (*see* Tr.

4   473). Dr. Panzer also opined that plaintiff could lift or carry ten pounds frequently; could

5   lift twenty pounds at a maximum; could sit for most of the day, but only walk or stand for

6   brief periods; and that she had postural limitations (*see* Tr. 471).

7       In addition to recitations of the treatment notes and opinions of Dr. Panzer (*see* Tr.

8   25-26, 32, 33), the ALJ included the following analysis and discussion regarding the

9   opinions of Dr. Panzer:

10

11      In a April 6, 2009, Physical Evaluation, Dr. Panzer opined that the
        claimant's chronic low back pain limited her to less than sedentary work.
12      (internal citation to Exhibit 14F).

13      In an April 28, 2010, Physical Residual Functional Capacity
        Questionnaire, Dr. Panzer opined that the claimant was incapable of even
14      a 'low stress' job and that, as a result of her impairments or treatment,
        would be absent from work more than four days a month. Dr. Panzer
15      went on to say that he believed that the claimant's mental health
        condition contributed to her chronic pain syndrome and her overall level
16      of disability. Despite fairly maximal medical therapy for both her back
        problem and her mental health disorder, he did not foresee the claimant
17      'improving to the point of employability.' (internal citation to Exhibit
        19F).
18

19      As stated above, Dr. Panzer's treatment notes are devoid of objective
        findings supporting the degree of limitation he assessed. Examination of
20      the claimant's back symptoms revealed only subjective declarations of
        pain with palpation and no neurological findings. Additionally, there is
21      nothing in the way of imaging studies to explain the claimant's
        subjective complaints. Dr. Panzer's opinion regarding the claimant's
22      mental health condition is also without support in the record; the
        claimant consistently described her mood as improved with psychotropic
23      medications. Finally, Dr. Panzer's opinions are inconsistent with the
        level of functioning described by the claimant. (internal citation to
24

1        Exhibit 5E). For the foregoing reasons, the undersigned gives Dr.
2        Panzer's opinions little weight.

3  (Tr. 35).

4        The ALJ found that Dr. Panzer's opinions are devoid of objective findings

5  supporting the degree of limitation he assessed. However, although Dr. Panzer noted

6  plaintiff's self-reported complaints of pain, the ALJ fails to acknowledge that Dr. Panzer

7  had treated plaintiff for years and examined plaintiff on many occasions, and fails to

8  acknowledge the objective component of a doctor's observation of pain following

9  palpation (*see, e.g.*, Tr. 412; *see also* 472-73 (explicit indication of examination of

10  plaintiff and range of motion testing)). Even Dr. Alexander, to whose opinion the ALJ

11  gave "great weight," acknowledged plaintiff's limitations from "mild loss of range of

12  motion of her right hip" (*see* Tr. 34).

13        In addition, the ALJ indicated that there was "nothing in the way of imaging

14  studies to explain the claimant's subjective complaints" (*see id.*). However, this finding

15  by the ALJ is contradicted by Dr. Panzer's explicit indication (twice) in the record that

16  the objective basis for his assessments included plaintiff's 2006 MRI which, according to

17  Dr. Panzer, showed early degenerative joint disease and degenerative disc disease, as

18  well as facet arthritis (*see* Tr. 350; *see also* Tr. 463). The ALJ failed to mention Dr.

19  Panzer's reliance on MRI results, and appears not to have been aware that any imaging

20  results existed. To this point, the Court notes that no MRI results appear to be included in

21  the record.

1    A claimint has the burden to present the necessary evidence of disability; however,

2   before relying on a lack of imaging results as a reason to fail to credit a treating

3   physician's opinion purportedly based on an MRI, the ALJ should comply with the duty

4   to develop an ambiguous record and attempt to obtain the MRI, by recontacting the

5   physician, if necessary. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001);

6   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ committed

7   legal error by relying on a lack of imaging results, when the record contains a strong

8   indication from a treating physician that such imaging results exist, and that they support

9   the physician's opinion.

10    Plaintiff also argues that the extent of plaintiff's pain cannot be determined by

11   imaging studies, especially as plaintiff argues that her primary physical impairment

12   appears to be a myofascial pain syndrome (*see* Opening Brief, ECF No. 15, p. 8).

13   Defendant argues in response that plaintiff does not have a valid diagnosis of myofascial

14   pain syndrome, citing a medical dictionary (*see* Response, ECF No. 16, pp. 16-17). Dr.

15   Brian Ready, M.D. diagnosed plaintiff with myofascial pain on May 9, 2006 (*see* Tr.

16   342). Defendant's different medical opinion along with a citation to a medical dictionary

17   does not render a diagnosis by a medical doctor invalid.

18    The ALJ also indicates in her decision that Dr. Panzer's opinions are inconsistent

19   with the level of functioning described by the claimant (*see* Tr. 35 (*citing* Exhibit 5E)).

20   However, the ALJ failed to specify any functional ability claimed by plaintiff that is

21   inconsistent with any of Dr. Panzer's opinions (*see id.*). Therefore, the Court concludes

1    that this is not a specific and legitimate reason based on substantial evidence in the record

2    as a whole to fail to credit fully Dr. Panzer's opinions.

3        Based on the stated reasons and the relevant record, the Court concludes that

4    the ALJ's rejection of Dr. Panzer's opinions regarding plaintiff's physical limitations is

5    based on legal error and not supported by substantial evidence in the record as a whole.

6    The ALJ has not provided specific and legitimate reasons for her failure to credit fully

7    Dr. Panzer's opinions regarding plaintiff's physical impairments.

8        The ALJ's RFC conflicts with Dr. Panzer's opinions, as, for example, Dr. Panzer

9    opined that plaintiff was limited to sedentary work, with greater lifting requirements than

10   the ALJ, who found plaintiff capable of medium work (*see* Tr. 30, 349, 471). Therefore,

11   the error in the evaluation of Dr. Panzer's opinions is not irrelevant to the ultimate

12   disability determination and is not harmless error. *See Molina v. Astrue*, 674 F.3d 1104,

13   1115 (9th Cir. 2012).

14       The Court notes, however, the ALJ also indicated that Dr. Panzer's opinion

15   regarding plaintiff's mental health condition was not supported by consistent descriptions

16   by plaintiff of improvement with psychotropic medications (*see* Tr. 35). Although there is

17   some variability in plaintiff's reports regarding the efficacy of her psychotropic

18   medications and there are notations regarding various changes in medications, there also

19   are a number of instances pointed out by the ALJ throughout her decision that support the

20   ALJ's finding, such as plaintiff's indication to Dr. Panzer that "I love Abilify" (*see* Tr.

21   396; *see also* Tr. 381 ("mood much better with recent increase in Lamictal")). The Court

22   also notes that Dr. Panzer indicated explicitly on one occasion that he deferred to

23

24

plaintiff's mental health professional to rate the severity of limitation plaintiff suffered from her depressive symptoms (*see* Tr. 349). Therefore, for the reasons stated, the Court finds that this finding by the ALJ regarding plaintiff's mental health condition as opined by Dr. Panzer is supported by substantial evidence in the record as a whole.

   b.  Dr. Paul Choi, M.D.

Dr. Choi examined plaintiff on January 3, 2009 (*see* Tr. 284-89). He performed a mental status examination, noting for example, that plaintiff appeared at times tearful and dysphoric (Tr. 286). Regarding plaintiff's memory performance, Dr. Choi indicated that plaintiff completed digit span forwards correctly, "but for the backwards digit span she is not able to remember all of the  numbers and she only remember 3 of the numbers, infact (sic)" (*id.*). Dr. Choi also observed that plaintiff demonstrated a concentration deficit, as she failed to perform all three steps correctly of a simple, three-step task (*see id.*).

The ALJ included the following discussion regarding the opinion of Dr. Choi:

> Following psychiatric evaluation of the claimant in January 2009, Dr. Choi opined that the claimant had the ability to perform simple and repetitive tasks. However, her ability to perform more detailed and complex tasks may have been impaired somewhat by some lapses in attention in her immediate and short-term memory. There were times when the claimant exhibited relative good attention in concentration, but it was quite possible that her low self-confidence, low self-worth and being distracted because of pain might have made it difficult for her to perform consistently in a workplace. She seemed pleasant enough and would be able to accept instructions relatively well from a supervisor if the instructions were presented to her in a patient and kind manner. It seemed as though she would be able to interact on a minimally adequate level with coworkers and the public at this time, but she likely would have difficulty dealing with the usual stress encountered in a work place, at least on a consistent basis. From a purely psychiatric point of view it

1
2
3
4
5
6
7
8
9
10

seemed as though she would be able to maintain regular attendance in the work place, but it appeared as though her chronic pain would make it difficult for her to maintain regular attendance at a work place at this time. (internal citation to Exhibit 4F/4-5). Dr. Choi's opinions are given only partial weight. His opinions that the claimant would have difficulty dealing with the usual stress encountered in a work place on a consistent basis is unsupported by the grossly normal mental status examination and appear to be based solely on the claimant's subjective report of her symptoms and limitations. Also, Dr. Choi's opinion that pain would make it difficult for the claimant to maintain regular attendance at a work place is given little weight. Again, this opinion is based almost exclusively on the claimant's complaints of pain, which differed depending upon which provider she was seeing; the undersigned notes, for example, that earlier that same day the claimant had said that her pain was relieved by rest and MS Contin. Additionally, as a psychiatrist, Dr. Choi is not qualified to assess the claimant's physical functional limitations.

11   (Tr. 34; *see also* Tr. 287-88).

12       First, regarding Dr. Choi's opinion about plaintiff's difficulties dealing with the

13   usual stress encountered in the work place, the ALJ found that it was not supported by the

14   "grossly normal mental status examination and appear to be based solely on the

15   claimant's subjective reports of her symptoms and limitations" (*see* Tr. 34). However, Dr.

16   Choi provided his objective observation that plaintiff appeared at times tearful and

17   dysphoric (Tr. 286); and in support of his findings regarding plaintiff's memory

18   performance, Dr. Choi indicated that plaintiff completed digit span forwards correctly,

19   "but for the backwards digit span she is not able to remember all of the numbers and she

20   only remember 3 of the numbers" (*id.*). Dr. Choi also observed that plaintiff

21   demonstrated a concentration deficit, as she failed to correctly perform all three steps of a

22   simple, three-step task (*see id.*).

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 15

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's finding that Dr. Choi appeared to base his opinion regarding plaintiff's stress tolerance "solely on the claimant's subjective reports of her symptoms and limitations" is not based on substantial evidence in the record as a whole (*see* Tr. 34).

The ALJ's characterization of plaintiff's MSE as "grossly normal" does not explain why her interpretation of plaintiff's MSE results are more correct than the interpretation of the trained psychiatrist who conducted the examination. *See Reddick, supra*, 157 F.3d at 725 (*citing Embrey*, *supra*, 849 F.2d at 421-22) (the ALJ must explain why her own interpretations, rather than those of the doctors, are correct).

In addition, regarding Dr. Choi's qualification to assess plaintiff's physical functional limitations, the Court notes that Dr. Choi is a medical doctor, having obtained his M.D. Therefore, he is an acceptable medical source and is qualified and competent to opine on plaintiff's physical functional limitations. Regarding defendant's citations in support of the ALJ's decision, although a psychological doctor only has an advanced degree (Ph.D.) related to the study of psychological disorders and impairments, a psychiatrist obtains advanced training regarding all of the processes in the human body, physical and mental, and obtains a medical degree (M.D.) before any specialization process is begun in the field of psychiatry. Although a medical doctor's area of specialty is relevant, a physician with a doctoral medical degree (M.D.) is qualified to assess a claimant's physical functional limitations. Notably, defendant contends that Dr. Eric Paul Alexander, M.D. is qualified to make such assessments (*see* Response, ECF No. 16, p. 21). However, as Dr. Alexander underwent medical school training to obtain his M.D. as

did Dr. Choi when he obtained his M.D., defendant fails to explain why Dr. Choi's further training in the specialty of psychiatry deprives Dr. Choi of the capabilities he had as an M.D. prior to the specialized training.

Finally, the Court notes that the ALJ gave no reason for failing to include in plaintiff's RFC Dr. Choi's opinion that plaintiff could have received instructions from a supervisor relatively well only if the instructions were presented to her in a patient and kind manner.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ committed harmful legal error in the evaluation of the opinions of Dr. Choi. The ALJ disregarded some of Dr. Choi's opinions without specific and legitimate reasons supported by substantial evidence in the record as a whole. Therefore, Dr. Choi's opinions should be evaluated anew following remand of this matter.

c.  Dr. Kristi Breen, Ph.D.

Dr. Breen examined plaintiff on April 29, 2009 (*see* Tr. 357-66). She provided numerous opinions regarding plaintiff's ability to work (*see, e.g.*, Tr. 359).  For example, she opined that plaintiff suffered from some moderately severe and some markedly severe functional cognitive limitations (*see id.*). Dr. Breen indicated that her assessments regarding plaintiff's cognitive limitations were based in part on plaintiff's limited problem solving skills and limited abstract reasoning, which plaintiff showed during her examination (*see id.*). In her notations of plaintiff's MSE, Dr. Breen assessed that plaintiff did not demonstrate an intact ability to describe the meaning of common

proverbs about rolling stones and glass houses; and assessed that plaintiff provided very limited and shallow answers to questions testing her insight and judgment (*see* Tr. 361).

The Court first notes that the ALJ's reliance on the fact that the evaluation was performed by Dr. Breen for "the purpose of determining plaintiff's eligibility for state assistance" was improper and contrary to Ninth Circuit caselaw (*see* Tr. 35). According to the Ninth Circuit, the "purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). The Court continued, finding that an "examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." *Id.* (*citing Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D. Or. 1993)). Although this fact may be relevant to issues of plaintiff's credibility, as it relates to plaintiff's motivation, this fact is not a specific and legitimate reason for the failure to credit fully the doctor's opinions herein. *See id.*

The only support for this decision regarding Dr. Breen that remains is the ALJ's reliance on a finding that Dr. Breen's opinions were based largely on plaintiff's self-report and contained few objective findings in support (*see* Tr. 35). Based on the a review of Dr. Breen's report, including her explicit reliance in part on plaintiff's limited problem solving skills and limited abstract reasoning, as demonstrated by plaintiff during her examination, the Court concludes that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record as a whole for her rejection of the opinions of Dr. Breen (*see* Tr. 359).

2.   **Whether or not the ALJ erred in her review of plaintiff's credibility and**

**testimony**.

A determination of a claimant's credibility relies in part on the assessment of the

medical evidence. *See* 20 C.F.R. § 404.1529(c). The Court has concluded that the ALJ

erred in her review of the medical evidence, *see supra*, section 1. In addition, the ALJ

relied heavily on her discussion of the objective medical evidence when failing to credit

fully plaintiff's credibility (*see* Tr. 31-33). Therefore, plaintiff's credibility and testimony

should be assessed anew following remand of this matter.

3.   **Whether or not the ALJ erred in her review of the lay evidence**.

Pursuant to the relevant federal regulations, in addition to "acceptable medical

sources," that is, sources "who can provide evidence to establish an impairment," *see* 20

C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and

"other sources" such as nurse practitioners, therapists and chiropractors, who are

considered other medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v.*

*Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. §

404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL

2329939. An ALJ may disregard opinion evidence provided by "other sources,"

characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane

to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236

F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Here, the ALJ failed to credit fully lay evidence provided by plaintiff's mother because the ALJ found that "there is no support in the objective record for the claimant's allegations of severe pain" (Tr. 36). However, the Ninth Circuit has characterized lay witness testimony as "competent evidence," noting that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*quoting Van Nguyen, supra*, 100 F.3d at 1467) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)).

In addition, the Court already has concluded that the ALJ erred in her review of the objective medical evidence, *see supra*, section 1. Therefore, the lay evidence provided by plaintiff's mother should be evaluated anew following remand of this matter. The Court notes that the ALJ's finding that the level of functioning opined in the lay testimony did not support a finding of disability is not a reason to fail to credit it fully.

4.  **Whether or not the ALJ erred in her review of plaintiff's residual functional capacity ("RFC").**

As the Court already has determined that the medical evidence, plaintiff's testimony and the lay evidence should be evaluated anew, the RFC determination also

must be evaluated anew following remand of this matter, as should the remainder of the

sequential disability process, as relevant.

5. **Whether or not this matter should be reversed and remanded with a
direction to award benefits or for further proceedings**.

Generally, when the Social Security Administration does not determine a

claimant's application properly, "'the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation.'" *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

Circuit has put forth a "test for determining when [improperly rejected] evidence

should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues that
> must be resolved before a determination of disability can be
> made, and (3) it is clear from the record that the ALJ would be
> required to find the claimant disabled were such evidence
> credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th

Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

Furthermore, the decision whether to remand a case for additional evidence or simply to

award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683,

689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

<u>CONCLUSION</u>

Based on the stated reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on September 20, 2013, as noted in the caption.

Dated this 28th day of August, 2013.

J. Richard Creatura
United States Magistrate Judge